WILLIAM A. MATERN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

GERTRUD B. MATERN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 27965, 34250. Promulgated November 19, 1930.

*Victor Ford Collins, Esq.,* and *George H. Shreve, Esq.,* for the petitioners.

*Mason B. Leming, Esq.,* for the respondent.

### OPINION.

SEAWELL: In the first place, we fail to see wherein we have jurisdiction of the petition filed in the name of William A. Matern (Docket No. 27965). The fact that the parties who received the notice and attempted to start proceedings with respect thereto may have been the proper parties to whom such a notice should have been sent does not alter the technical requirement of the statute referred to above. *Fifth Third Union Trust Co., Trustee, et al.*, 20 B. T. A. 88, and *New York Trust Co. et al., Trustees*, 20 B. T. A. 162. Since the parties who now appear as petitioners in response to the notice are not the "taxpayer" to whom the notice was directed, a petition on their account may not be recognized. Various situations of a similar character have heretofore been considered by the Board, wherein we have held that the statute does not give us jurisdiction of such proceedings. *Bisso Ferry Co.*, 8 B. T. A. 1104; *Taylor Brothers*, 9 B. T. A. 877; *J. A. Staley*, 9 B. T. A. 932; *Bond, Inc.*, 12 B. T. A. 339; *J. F. McKean*, 15 B. T. A. 795; *Katherine L. Voltz. Executrix*, 16 B. T. A. 167; and *Van Cleave Trust*, 18 B. T. A. 486. The proceeding with respect to Docket No. 27965 will accordingly be dismissed.

It is somewhat difficult to determine the real contentions of the petitioner or the facts upon which she relies with respect to the issue raised in the petition of Gertrud B. Matern as to whether the entire income from certain property should be included in her returns for 1923 and 1924. Apparently, however, the situation is that when William A. Matern died the record title to certain real estate was in the said Matern and a large amount of personal property which had been purchased by him was on hand. A special administrator of the estate was first appointed, who later became administrator. A Federal estate tax return was filed by the administrator, in which it was contended that all of the property included in the estate was the separate property of Gertrud B Matern, petitioner herein, having been purchased with her separate funds. A like contention was made before the Inheritance Tax Department of California, in which proceeding Gertrud B. Matern testified in support of such contention. After due consideration, the contention was upheld in each instance and the estate was relieved

388

of the payment of both the Federal estate tax and State inheritance tax. No evidence was introduced by the petitioner to show to whom the property belonged. The Commissioner has made his determination, which must be accepted as prima facie correct, on the basis that the property in question was at all times the separate property of petitioner Gertrud B. Matern and that, therefore, the income from such property was properly returnable by her. While the record is not satisfactory as to how the income was returned by Gertrud B. Matern and the administrator, apparently each reported one-half thereof.

On the record as presented we are of the opinion that we must consider the property included in the estate as the separate property of Gertrud B. Matern and the income therefrom properly returnable by her. The fact that the administrator was administering the estate of William A. Matern when such estate apparently was without assets of the said William A. Matern would not necessarily make the income from the separate property of Gertrud B. Matern included therein taxable to the estate, even though the administrator collected such income. The petitioner, in her brief, does not attempt to show that the entire property in question was not her separate property or that the income was not finally distributed to her. Except for a contest of the decedent's will filed in January, 1925, and dismissed in March, 1925, there does not seem to have been any question raised in the probate proceedings as to the ownership of the property or the income therefrom. What the petitioner now seems to contend is that, because there was an administrator appointed who exercised control over her property and the income therefrom, she should not pay a tax thereon until the administrator was finally discharged and the property formally released to her, even though, as far as the record goes, she might have demanded and received such property prior to such time. We are unable to agree with this contention. Certainly, it finds little support in the contest of the will which was filed and dismissed within the first three months of 1925, when the income with which we are concerned is for 1923 and 1924. And at all times the administrator and Gertrud B. Matern seem to have been agreed that it was the latter's separate property, as shown by their action with respect to Federal estate and State inheritance taxes. Nor, even if here material, is it an answer to the taxability of the income of Gertrud B. Matern in 1923 and 1924 to say that since she was on the cash receipts and disbursements basis she should not report the income until received for the reason that it is not shown on what basis she reported her income. On the whole, we see no justification, on the record as presented, for disturbing the Commissioner's action in including the entire income

from the separate property of Gertrud B. Matern in her returns for 1923 and 1924.

The other question sought to be raised relates to the cost of bringing certain orange groves to a productive stage, but the evidence and entire record are very unsatisfactory as to what occurred that gives rise to the difference between the parties. Of the many assignments of error set forth in the petition of Gertrud B. Matern, the only one which would seem to raise such a question is that the Commissioner " erred in increasing the profit reported in petitioner's 1923 income tax return from the sale of citrus trees." But it is not even shown that a sale took place, or, if such a sale took place, what was sold and what was received therefor. It is shown that land was acquired about 1913 or 1914, but no cost is shown for such land, and that orange groves were set out thereon in 1914. Beyond these facts we have little except certain evidence introduced for the purpose of showing what it cost to bring the orange groves to a productive state. The assignment of error refers to a sale of citrus trees. Whether this refers to a sale of the trees as such or a sale of the orange groves, we do not know. Some basis exists for considering that it refers to an amount received on account of the destruction of the trees, for the reason that some time prior to 1923 at least some and perhaps all of the lands acquired in 1913 or 1914, and still owned in 1923, were leased to an oil company, and one witness testified that after the estate was settled he " took care of the land until it was not good any more for an orchard, after it was spoiled by the oil drilling." The estate was not settled until long after the years here in question. Under the record as thus presented we are of the opinion that we are not justified in attempting to fix the cost of bringing the orange groves to a productive stage.

But even aside from the state of the record as indicated above, the qualifications of the witnesses offered by the petitioner, as well as the testimony given by them, were not such as would render their opinions acceptable as to the cost of producing the orange groves in question. The first witness had no knowledge of the Matern properties prior to 1918 and had no experience with orange property prior to such time. The second witness, L. W. Boothe, did not become acquainted with the Matern properties until 1923, and had had little experience with properties of this character prior to that time. In fact, this witness stated that he had had " no experience in bringing a tree to the commercial bearing stage." The third witness assisted in planting this particular orange grove in 1914, but had no connection with it from 1914 to 1922. His only other experience

with orange groves was in looking after the Matern properties during the illness and after the death of William A. Matern. Petitioner's counsel admitted at the conclusion of his direct examination: "I do not think he is qualified." Obviously, the opinion evidence of such witnesses could not be considered helpful in arriving at an answer to the question sought to be presented.

> *Docket No. 27965 will be dismissed for want of jurisdiction, and judgment will be entered for the respondent in Docket No. 34250.*