**INVESTORS STOCK FUND, INC., a Nevada corporation, Plaintiff,**

v.

**Franklin H. ROBERTS; Loretto Lohman Roberts, and Oswald M. Johnson, Executrix and Executor, respectively, of the Estate of George W. Roberts, Deceased; and Loretto Lohman Roberts, widow and sole heir at law of George W. Roberts, Deceased, Defendants.**

**Loretto Lohman ROBERTS, Plaintiff in Interpleader,**

v.

**Franklin H. ROBERTS, Defendant in Interpleader.**

**Civ. No. 1821.**

United States District Court
D. Montana,
Great Falls Division.

April 8, 1959.

On Motions for Additional Findings
Sept. 4, 1959.

Church, Harris, Johnson & Williams, Great Falls, Mont., for Investors Stock Fund, Inc., plaintiff.

Hall, Alexander & Kuenning, Great Falls, Mont., for defendants, Loretto Lohman Roberts and Oswald M. Johnson.

Wuerthner & Wuerthner, Great Falls, Mont., for defendant, Franklin H. Roberts.

MURRAY, Chief Judge.

Investors Stock Fund, Inc., hereinafter referred to as original plaintiff, filed this interpleader action against Franklin H. Roberts, Loretto Lohman Roberts and Oswald M. Johnson, Executrix and Executor, respectively, of the Estate of George W. Roberts, deceased; and Loretto Lohman Roberts, as widow and sole heir at law of George W. Roberts, deceased, praying that the defendants be required to interplead and settle between themselves their rights as to a certain stock certificate and the shares represented thereby.

In due course, upon motion of Investors Stock Fund, Inc., which motion was joined in by the respective defendants, an interlocutory order and decree for interpleader was entered, and after appropriate pleadings the case came to issue between Loretto Lohman Roberts as plaintiff in interpleader, hereinafter referred to as plaintiff, who claims the stock certificate and the shares of stock represented thereby, as the widow and sole heir of said George W. Roberts, deceased, and Franklin H. Roberts, defendant in interpleader, hereinafter referred to as defendant, and brother of the deceased, who claims the stock certificate and shares of stock represented thereby, as beneficiary of a revocable trust established by the said George M. Roberts in his lifetime. A disclaimer of any interest in the said certificate of stock was filed by Oswald M. Johnson, as executor of the estate of George W. Roberts, deceased. Thereafter the plaintiff Loretto Lohman Roberts, and the defendant Franklin H. Roberts, each moved for summary judgment based upon the admissions in the pleadings and admissions made by the parties in response to requests for admissions.

Before considering the motions for summary judgment, there are two other motions which the Court must dispose of. After the motions for summary judgment on behalf of Loretto Lohman Roberts and Franklin H. Roberts had been filed, the original plaintiff, Investors Stock Fund, Inc., filed a motion for leave to file a brief amicus curiae, and as a result of that motion, Loretto Roberts, plaintiff, moved to vacate the interlocutory order and decree and to dismiss the action upon the ground that by seeking to file a brief amicus curiae, Investors Stock Fund, Inc., demonstrated that it was not such a disinterested party as was entitled to bring an interpleader action.

The point upon which Investors Stock Fund, Inc., seeks to advise the Court as amicus curiae is as to the validity of the declaration of trust made by George W. Roberts and under which he held the stock certificate in question. However, at the time of instituting the action and at the time of the motion which resulted in the interlocutory order and decree for interpleader, Investors Stock Fund, Inc., represented to the Court that it was without interest in the

disposition of the stock certificate or shares of stock represented thereby, and while the present Judge is not the Judge who made the interlocutory order and decree, it seems clear from the record that the finding in the interlocutory order and decree that this was a proper action in interpleader and the injunction against defendants instituting any action against Investors for the transfer or redemption of the stock certificate were made upon the basis of the disinterest of Investors. The decision on the conflicting claims of the plaintiff and defendant in interpleader depends in part upon the validity or invalidity of the declaration of trust, and after having in effect represented to the Court their complete neutrality on that question, Investors Stock Fund, Inc., should not now be permitted to reenter the case to support the validity of the declaration of trust.

Therefore, It Is Ordered and this does order that the motion of Investors Stock Fund, Inc., for leave to file a brief amicus curiae be and the same hereby is denied.

 As to the motion of plaintiff to vacate the interlocutory decree and order and to dismiss the action, that motion, too, will be denied. Neither under the interpleader statute, 28 U.S.C. § 1335, nor under the interpleader rule, Rule 22 of the Federal Rules of Civil Procedure, 28 U.S.C., is the complete disinterest of plaintiff necessary. In Bierman v. Marcus, 3 Cir., 246 F.2d 200, 202, the Court pointed this out as follows:

"Thus, jurisdiction in interpleader is not dependent upon the merits of the claims of the parties interpleaded, and a plaintiff can maintain the action even though he believes that one of the claims is valid and the other, or others, without merit (citing cases)."

Thus. even if the interest of Investors Stock Fund, Inc., disclosed by its petition to file a brief amicus curiae had appeared at the time of filing the complaint, it would still have been entitled to maintain this action under the statute and the rule as a bill in the nature of a bill in interpleader.

Plaintiff points out that certain provisions of the interlocutory order and decree are appropriate only in an action of strict interpleader (wherein the complete disinterest of plaintiff is necessary) and are inappropriate in an action in the nature of a bill of interpleader. However, the record indicates that the provisions of the interlocutory order and decree were agreed to by all the parties concerned, including the plaintiff, and no objection was made to any of its provisions. Without expressing any opinion on the question, it may be that upon a proper showing by any of the parties the Court would have the power to modify the interlocutory order and decree in any respect necessary to make it conform to one in an action in the nature of a bill in interpleader, but the provisions of that order and decree, which were agreed upon by all the parties, cannot now be used to defeat the right of plaintiff to maintain the action.

Therefore, It Is Ordered and this does order that the motion of plaintiff, Loretto Lohman Roberts, to vacate the interlocutory order and decree and to dismiss the action be and the same hereby is denied.

As pointed out, both Loretto Roberts, the plaintiff, and Franklin Roberts, the defendant, have moved for summary judgment. The undisputed facts appear to be as follows:

In November, 1945, George W. Roberts made application for the purchase of shares of the capital stock of Investors Stock Fund, Inc., in the amount of $5,000. At the same time he executed an instrument entitled "Declaration of Trust-Revocable", directing Investors to issue the capital stock applied for in the name of George W. Roberts as trustee for Franklin H. Roberts, the defendant. The sum of $5,000 was paid to the company and the company issued its certificate of capital stock No. 1738 for 375.094 shares to George W. Roberts as trustee for Franklin H. Roberts, in accordance with the application for the purchase of shares and the declaration of

trust theretofore executed by George W. Roberts. Copy of the application and Declaration of Trust-Revocable are appended to this opinion.

On November 9, 1954, the said George W. Roberts died, leaving a last will and testament dated April 2, 1953; said last will and testament was admitted to probate in the District Court of the Twelfth Judicial District of the State of Montana, in and for the County of Blaine, on December 4, 1954, and Oswald M. Johnson and Loretto Lohman Roberts, the surviving widow and the plaintiff in this case, were appointed executor and executrix, respectively, of said last will and testament. The inventory and appraisement was filed in the George W. Roberts' estate on March 9, 1955, and listed, among other assets, "375.094 shares of Investors Stock Fund, Inc., evidenced by certificate No. 1738, dated November 13, 1945, issued to George W. Roberts as trustee for Franklin H. Roberts @ 21.260".

Thereafter on May 27, 1955, Loretto Lohman Roberts filed her renunciation of her deceased husband's will and elected to take her dower in any real property owned by him at the time of his death, and her legal share in the personal estate of her husband. On December 19, 1955, the District Court of the Twelfth Judicial District of the State of Montana, in and for the County of Blaine, sitting in probate, entered its order to the effect that Loretto Lohman Roberts was the sole heir of the deceased George W. Roberts and was entitled to the entire estate. That order of the probate court was appealed to the Supreme Court of the State of Montana by Franklin H. Roberts, the present defendant, and Helen Roberts Truax, brother and sister respectively of the said George W. Roberts, who had been devised the sum of $20,000 each under the terms of said will, and is pending there.

Thereafter, on May 4, 1956, a decree of partial distribution was entered in the estate of George W. Roberts, deceased, which decree purported to distribute to Loretto Lohman Roberts, as the widow and sole heir of the decedent, among other property, the 375.094 shares of Investors Stock Fund, Inc., evidenced by certificate No. 1738 above referred to. No appeal was taken from said decree of distribution by said Franklin H. Roberts, the defendant herein. However, on July 14, 1956, Franklin H. Roberts filed in the probate court a motion to set aside said decree of distribution, which motion was denied by the probate court.

In the meantime, and in the month of March, 1955, the defendant Franklin H. Roberts had made application to Investors Stock Fund, Inc., as the beneficiary named in the said stock certificate for the redemption of said stock certificate, and Investors Stock Fund, Inc., at said time had also been advised that the stock was claimed as a part of the estate of George W. Roberts, deceased, and that the said Loretto Lohman Roberts claimed the same in her fiduciary capacity as the executrix of the estate of George W. Roberts, deceased. As a result of these conflicting claims, and on February 8, 1956, Investors Stock Fund, Inc., filed the present action for interpleader, named as defendants Franklin H. Roberts, Oswald M. Johnson and Loretto Lohman Roberts as executor and executrix, respectively, of the estate of George W. Roberts, deceased, and Loretto Lohman Roberts as widow and sole heir at law of said George W. Roberts.

Oswald M. Johnson, as executor of the estate of George W. Roberts, deceased, filed an answer disclaiming any right, title, claim or interest in or to the shares of stock upon the ground that the same had been distributed to Loretto Lohman Roberts, the widow and sole heir at law of George W. Roberts, deceased; Loretto Lohman Roberts appeared, claiming ownership of the stock upon the basis that the declaration of trust was invalid and that by virtue of the decree of distribution in the George W. Roberts' estate, she was the owner of the stock; and Franklin H. Roberts appeared, claiming the stock as beneficiary of the declaration of trust made by George W. Roberts.

Two questions are presented by the motions for summary judgment:

First, is the decree of distribution entered by the probate court in the estate of George W. Roberts, deceased, conclusive as to the ownership of said certificate of stock, and

Second, did the "Declaration of Trust-Revocable", executed by George W. Roberts at the time he purchased the stock, create a valid inter vivos trust, or is the same void as an attempted testamentary disposition of the stock certificate, it being conceded that the declaration of trust was not executed in conformity with the Montana statutes on wills?

Is the Decree of Distribution in the Estate of George W. Roberts, deceased, conclusive as to the ownership of the stock?

Loretto Lohman Roberts' first contention is that, regardless of the validity or invalidity of the declaration of trust made by George W. Roberts, the ownership of the stock in question was conclusively determined by the decree in the George W. Roberts' estate distributing said stock to her as the widow and sole heir at law of George W. Roberts, deceased, and that such determination was reaffirmed when the probate court refused to vacate the decree upon the petition of Franklin H. Roberts; in other words, that the decree of distribution of the probate court is res judicata in this action.

On this question, considerable argument in the briefs of both parties was devoted to the question of the sufficiency of the notice to Franklin H. Roberts of the decree of distribution in the George W. Roberts' estate, and also some question was raised as to whether the probate court was misled into distributing the stock in question to Loretto Lohman Roberts, free of the trust in favor of Franklin H. Roberts, in view of the fact that the stock was listed in the inventory and appraisement of the estate as being subject to the trust. However, in the Court's view, these questions are immaterial, because regardless of the sufficiency or insufficiency of the notice to Franklin H. Roberts, and regardless of whether or not the probate court was aware at the time it made the decree of distribution of the fact that the stock certificate was issued in the name of George W. Roberts, as trustee for Franklin H. Roberts, it is clear under Montana law, as well as the law generally, that the probate court in the Roberts estate was without jurisdiction to try the title to the stock in question as between Franklin H. Roberts, on the one hand, and either the Estate of George W. Roberts, deceased, or Loretto Lohman Roberts, as the widow and sole heir of George W. Roberts, deceased, on the other.

In In re Dolenty's Estate, 53 Mont. 33, 161 P. 524 at page 529, the Montana Supreme Court said:

"A district court sitting in probate has only the special and limited powers conferred by statute, and has no power to hear and determine any matters other than those which come within the purview of the statute or which are implied as necessary to a complete exercise of those expressly conferred. (Citing cases). Among the powers conferred by the part of the Codes relating to probate proceedings we do not find any provision authorizing the court, in connection with the settlement of estates, to determine questions of title between the estate and persons claiming adversely to it. These questions must be determined in proper proceedings instituted for that purpose (Citing cases)."

Again, in In re Day's Estate, 119 Mont. 547, 177 P.2d 862 at page 865, the Montana Court said:

"It is also well settled in this state that a district court sitting in probate cannot try questions of title or ownership of property alleged to belong to an estate." (Citing a long list of cases).

See also, In re Tuohy's Estate, 33 Mont. 230, 83 P. 486; In re Jennings' Estate,

74 Mont. 449, 241 P. 648; In re Davis' Estate, 27 Mont. 490, 71 P. 757; In re Vincent's Estate, 133 Mont. 424, 324 P.2d 403.

In the case of In re Stinger's Estate, 61 Mont. 173, 201 P. 693, at page 699, the Montana Supreme Court quoted with approval the following language from the California case of In re Estate of Burton, 93 Cal. 459, 29 P. 36, which seems to be in conflict with the law announced in the foregoing cases:

"It will not be denied that the decree of distribution and the order discharging the executor or administrator are within the scope of 'matters of probate,' in the sense of the Constitution, from which it necessarily follows that the court must have the incidental power, in some mode, to ascertain and determine who are entitled, as distributees, to the residue of the estate, even though such determination should involve a question as to title or possession of real property."

However, a reading of that case shows that the "determination * * * as to title or possession of real property", which the California Supreme Court indicated the probate court had jurisdiction to make, was only as between persons claiming under the estate and not adversely to the estate. The In re Estate of Burton case was brought under a section of the California Code to "ascertain and declare the rights of all persons to the Estate of Henry S. Burton, deceased, and to determine to whom distribution thereof was to be made". The Court pointed out that "the provisions of the section are carefully limited to the ascertainment and determination of rights and interests claimed in privity with the estates and are not applicable to rights or titles claimed adversely to such estates" (29 P. at page 36), and that the section "expressly authorizes and requires the court to determine 'the heirship to the deceased, the ownership of his estate, and the interest of each respective claimant thereto or therein,' *which is not claimed adversely to the estate*." 29 P. at page 37.

In In re Stinger's Estate, supra, the adverse claims which the Montana Supreme Court held the probate court had jurisdiction to decide both arose under the estate and not adversely to it.

In the instant case, the claim of Franklin H. Roberts to the stock in question was not made under, or in privity with, the estate of George W. Roberts, deceased, but was directly adverse to the estate. From the facts recited above, it appears that Franklin H. Roberts does have a claim under the estate to the $20,000 legacy which he was granted by the last will and testament of George W. Roberts, deceased, and he is litigating that claim at the present time before the Supreme Court of Montana, but his claim to ownership of the stock in question does not arise by virtue of his having been named as a legatee in the will. His claim to the stock arises by virtue of the declaration of trust made by George W. Roberts, and as a stranger to the estate. "It is an established principle of law that a Probate Court is without jurisdiction to try title to property as between a representative of the estate and a stranger to it." In re Helvey's Estate, 146 Cal.App.2d 662, 303 P.2d 1076, 1078.

It, therefore, appears that the decree of distribution in the George W. Roberts' Estate is not res judicata in this case. The probate court there was without jurisdiction to determine the conflicting claims of ownership of the stock involved, and the question still remains as to the validity or invalidity of the declaration of trust executed by George W. Roberts.

Is the "Declaration of Trust-Revocable" executed by George W. Roberts in his lifetime valid as a trust?

A copy of the "Declaration of Trust-Revocable", executed by George W. Roberts in his lifetime, is annexed to this opinion, and no attempt will be made here to summarize its provisions. The contention of plaintiff is that the instrument is ineffective as either a gift inter vivos or as a gift causa mortis of the stock to Franklin H. Roberts; and that as a trust it is invalid because it was merely an attempt on the part of George

W. Roberts to make a testamentary disposition of the stock to Franklin H. Roberts without complying with the Montana statutes on wills.

It is clear from the instrument itself, and it is conceded by the defendant, that the instrument was not intended to create, and is not effective as a gift, either inter vivos or causa mortis, so its validity as a trust is all that remains for consideration by the Court.

The contention that the declaration of trust was an attempt on the part of George W. Roberts to make a testamentary disposition of the stock to Franklin H. Roberts is based on two premises: first, it is claimed that by virtue of the declaration of trust George W. Roberts parted with none of the rights or incidents of ownership of the stock, and in reality retained complete ownership, both legal and equitable, and all of the rights and incidents of such ownership; and, second, that by virtue of the declaration of trust Franklin H. Roberts, the alleged beneficiary, acquired no interest of any kind in the stock.

This being a diversity case, it is governed by Montana law. However, the problems presented here have never been passed upon by the Montana Supreme Court, so recourse must be had to the law of trusts generally as announced by text writers and courts of other jurisdictions in an attempt to determine how the Montana Supreme Court would view the matter.

■ In examining the declaration of trust here involved and considering its effect on the ownership of the stock, in the light of these contentions of plaintiff, several basic principles of the law of trusts must be borne in mind. While it is true that there can be no trust when the full legal and equitable ownership vests in a single person, it is also true that a person may occupy two capacities with regard to a trust. Thus, the settlor of a trust may make himself trustee thereof (Restatement of Trusts, Sec. 100), or the settlor may likewise be a beneficiary of the trust (Restatement of Trusts, Sec. 114). These propositions are stated in 54 Am.Jur. "Trusts", Sec. 34, p. 45, as follows:

"It is essential to the creation of an express trust that the settlor presently and unequivocally make a disposition of property by which he divests himself of the full legal and equitable ownership thereof. He may make himself the trustee or one of the trustees, thus retaining the legal title in whole or part, or by making himself the beneficiary or one of the beneficiaries of the trust, he may retain the equitable ownership in whole or part, but he cannot retain the full legal and equitable ownership. The legal title must be definitely reposed in the trustee, whether he is the trustor (settlor) or another."

It is also to be borne in mind that in addition to the duties imposed upon a trustee by the terms of the trust itself, certain other duties are imposed upon one occupying the position of trustee by the law. Chapter 3, Title 86, R.C.M. 1947, sets out the obligations imposed on a trustee by the law of Montana. Two of the more important of these are the trustee's obligation to use good faith (Sec. 86–301, R.C.M.), and his obligation not to use the trust property for his own benefit (Sec. 86–302, R.C.M.).

With these things in mind we turn to the declaration of trust and consider its effect on the ownership of the stock in question.

By the declaration of trust George W. Roberts declared that he held said stock in trust for Franklin H. Roberts. That a valid trust may be created in this manner is clear (Restatement of Trusts, Secs. 17 and 28; 54 Am.Jur. "Trusts", Sec. 61, p. 69). In declaring the trust, George W. Roberts reserved to himself *in his capacity as settlor or trustor* the following rights with respect to the trust property:

1. The right to receive during his lifetime all cash dividends.

2. The right at any time to change the beneficiary of the trust, or. to revoke the trust by written notice to Investors Stock Fund, Inc., in such form as that Company prescribed, and regain the entire ownership of the property, and

3. Upon the sale or redemption of the stock by the trustee, the right to retain the proceeds of such sale or redemption.

Likewise the trust was to terminate upon the death of the beneficiary.

Under the declaration of trust, George W. Roberts, *in his capacity as trustee*, had the right to vote, sell, redeem, exchange, or otherwise deal in or with the stock, but in the event of sale or redemption, the trust was to terminate as to the stock sold or redeemed, and the proceeds of the stock sold or redeemed were to become the property of George W. Roberts as settlor.

 By this distribution of the rights incidental to ownership of the stock in question between Gorge W. Roberts, in his capacity as settlor, and George W. Roberts, in his capacity as trustee, George W. Roberts as settlor effectively relinquished some of the incidents of complete ownership of the stock. While he was free to sell or redeem the stock and apply the proceeds to his own use under the trust, his right to vote, exchange or deal with the stock in any manner otherwise than by sale or redemption was subject to the obligation which the law imposes on trustees, because under the trust, is was only as trustee that George W. Roberts had the right to vote, sell, redeem, exchange, or otherwise deal with the stock. Thus, for example, unless he first revoked the trust, he was required by law to use good faith in voting or exchanging the stock; he was prohibited by law from pledging the stock in a private deal of his own. As an absolute owner of the stock, George W. Roberts would be free to exchange the $5,000 worth of stock for a $10 hat, if he chose, but as trustee he would not be free to make such an exchange without first revoking the trust. And if George W. Roberts died after having committed any violation of his duties as trustee without revoking the trust, the beneficiary could hold his estate liable for any loss resulting to the trust fund as a result of such violations. 54 Am.Jur. "Trusts", Sec. 72, p. 76, points this out as follows:

"A trust with power of revocation remains operative and absolute until the right of revocation has been exercised in a proper mode. Authorized acts of the trustee done before the revocation confer vested rights and titles which cannot be questioned. Where the power of revocation is not exercised in the lifetime of the settlor or other person in whose favor it has been reserved, the validity of the trust remains unaffected, as though there never had been a reserved right of revocation."

On the other hand, immediately upon the execution of the declaration of trust, Franklin H. Roberts became vested with an equitable interest in the stock. This interest consisted essentially in a right to the performance of the trust, that is the right to have the trustee perform the duties imposed upon him by law, and eventually to succeed to complete ownership of the stock. That this interest was not to vest in enjoyment until the future, and was contingent in character, does not make it any less a vested interest.

"A beneficiary's purely equitable title, estate, or interest in the trust property constitutes property which, although sometimes analyzed as a chose in action, or a right to enforce in equity the performance of the trust, is generally regarded as something more than a chose in action. *Such property is vested in the beneficiary although it is a future interest, and contingent in character.*" 54 Am.Jur. "Trusts", Sec. 102, p. 93.

In Comment f., under Section 56, Restatement of Trusts, the authors state:

"Postponement of enjoyment until settlor's death. If by the terms of the trust an interest passes to the beneficiary during the life of the settlor, although the interest does not take effect in enjoyment or possession before the death of the settlor, the trust is not a testamentary trust, except as stated in Sec. 57 (2, 3) [1]. The disposition is not testamentary and the intended trust is valid, even though the interest of the beneficiary is contingent upon the existence of a certain state of facts at the time of the settlor's death."

Franklin H. Robert's interest arose immediately upon the execution of the declaration of trust, but it was not to take effect in enjoyment until the death of George W. Roberts, and was contingent upon his (Franklin's) being alive at that time, and upon the trust being unrevoked. As pointed out in the above quotations from American Jurisprudence and the Restatement, these circumstances do not make the interest any less real, or the trust invalid.

■ Much of the attack of the plaintiff upon the validity of the trust is necessarily based upon the erroneous proposition that the reserved power of revocation invalidates the trust. It seems clear to the Court that were the power of revocation not contained in the declaration of trust, there would be no question of its validity. Yet the right to reserve the power to revoke and still establish a valid trust is so well established in the law of trusts, that it cannot be questioned. Such right is indeed rec-ognized by statute in Montana. Section 86–602, R.C.M.1947, provides:

"A trust cannot be revoked by the trustor after its acceptance, actual or presumed, by the trustee and beneficiaries, except by the consent of all the beneficiaries, *unless the declaration of trust reserves a power of revocation to the trustor*, and in that case the power must be strictly pursued."

■ Likewise, the reservation of the right to revoke by George W. Roberts, coupled with the reservation of the cash dividends, and the reservation of the right to the proceeds of any of the stock sold or redeemed do not render the trust testamentary in character. The annotator in 32 A.L.R.2d 1279, citing cases from many jurisdictions, points out:

"The later cases run uniformly to the effect that a trust is not invalidated nor rendered testamentary in character by provisions reserving to the settlor the income or some other benefit during his lifetime and also the power to revoke."

Further on in the same annotation it is pointed out at page 1282 that:

"A reservation of the right to use the trust property during the settlor's lifetime, in addition to the right to revoke, may in some circumstances be suggestive of absence of any intent to create a trust in praesenti; yet the later cases indicate that trusts will usually be upheld notwithstanding the presence of that feature."

In Cleveland Trust Co. v. White, 134 Ohio St. 1, 15 N.E.2d 627, 629, 118

---

1. Section 57(2) of the Restatement deals with the situation where the settlor transfers to another person as trustee and is inapplicable here. (Section 57(3) provides:

"(3) Except as stated in Section 58 (which deals with tentative trusts of savings deposits), where the settlor declares himself trustee and reserves not only a beneficial life estate and a power to revoke and modify the trust but also power to deal with the property as he likes as long as he lives, the intended trust is testamentary."

As pointed out, George W. Roberts as settlor did not have the right to deal with the property as he liked as long as he lived while the trust remained unrevoked, but was bound by the laws imposing obligations on trustee.

A.L.R. 475 at page 478 and 479, the Court said:

"By the weight of authority, a trust, otherwise effective, is not rendered nugatory because the settlor reserves to himself the following rights and powers: (1) The use of the property and the income therefrom for life; (2) the supervision and direction of investments and reinvestments; (3) the amendment or modification of the trust agreement; (4) the revocation of the trust in whole or in part; (5) the consumption of the principal."

Finally, it is elementary that the creation of a trust is primarily dependent upon the intention of the settlor, and his manifestation of such intention. It is the Court's duty in construing an instrument purporting to create a trust to endeavor to ascertain the intent and purpose of the settlor, and to effectuate that intent insofar as it is consistent with the law. 54 Am.Jur. "Trusts", Sec. 17, p. 34. By declaring that he held the stock in question for his brother, Franklin H. Roberts, George W. Roberts clearly manifested his intention to create a trust, and there is nothing elsewhere in the declaration of trust or in the record of this case to refute that manifestation of his intention. And, for the reasons and on the authorities set out above, the Court is of the opinion that there is nothing in the law which requires the Court to thwart that intention by holding the trust invalid.

The Court is fortified in this opinion by the fact that "Declarations of Trust-Revocable", identical with the one involved here, were considered by the Supreme Courts of the States of Illinois and North Carolina, in the face of attacks similar to those made here, and were held to be valid, in the cases of Farkas v. Williams, 5 Ill.2d 417, 125 N.E.2d 600, and Ridge v. Bright, 244 N.C. 345, 93 S.E.2d 607. Not only were the instruments in those cases identical word for word with the instrument here involved, but the subject of the trust was stock of the same company as in this case. This Court agrees with the reasoning in those cases and the authorities cited therein.

The Court is therefore, of the opinion that the "Declaration of Trust-Revocable", executed by George W. Roberts, created a valid inter vivos trust, and upon the death of George W. Roberts the 375.094 shares of Investors Stock Fund, Inc., represented by Certificate No. 1738, became the absolute property of the beneficiary, Franklin H. Roberts, and that under the decree of distribution in the Estate of George W. Roberts, deceased, Loretto Lohman Roberts took said stock certificate and the shares represented thereby, subject to the trust in favor of said Franklin H. Roberts.

Counsel for Franklin H. Roberts is directed to prepare a judgment in accordance with this opinion, and in accordance with the provisions of Rule 11(b) of the Rules of this Court.

On Plaintiff Interpleader's Combined Motions for Additional Findings, etc.

By the combined motions of plaintiff in interpleader for additional findings, for a new trial and objection to proposed judgment, plaintiff in interpleader complains:

1. That the Court in its order and opinion filed April 8, 1959, did not consider the effect of the order of February 13, 1957, of the District Court of the Twelfth Judicial District of the State of Montana, hereinafter referred to as the probate court, in denying the motion of defendant in interpleader to vacate the decree of distribution entered in the District Court in the George Roberts' Estate, as res adjudicata, and

2. That the Court did not consider the effect of the Declaration of Trust upon the right of the widow to share in the personal property in her deceased husband's estate.

Both of these complaints are without foundation. In the original order and opinion filed in this matter on April 8, 1959, the Court found that the Trust created by George Roberts in favor of

Franklin Roberts with respect to the stock in question was not illusory and not in violation of the laws of the State of Montana, but was a legal, effective trust which still existed unrevoked at the time of his death. The effect of that holding is that the ownership of the stock covered by the trust, under the terms of the trust, passed immediately upon the death of George Roberts to Franklin Roberts, as beneficiary of the trust. It never became a part of the George Roberts' Estate, despite its being included in the inventory and appraisement and decree of distribution, any more than Yankee Stadium or the U. S. Mint would become a part of the Roberts' Estate by being included in the inventory and decree. Therefore, the question of the rights of a widow to share in the personal property in her deceased husband's estate was not before the Court.

As pointed out in the original opinion and order Franklin Roberts' claim to the stock in question arises not by virtue of a will, not by virtue of heirship, but solely by virtue of the trust. He is claiming not in privity with, or under, the estate, but adversely to the estate. In that situation, under the Montana cases cited in the opinion and memorandum, as well as under the law generally, the Probate Court was without jurisdiction to try the conflicting claims of the estate and a third party to ownership of the stock, nor did the Probate Court by its decree of distribution or order of February 13, 1957, purport to decide that question.

■ A decree of distribution in an estate creates no title, it merely confirms in those entitled by law thereto, the title which vested in them immediately upon the death of the decedent, either under the will or by operation of law. In re Deschamps' Estate, 65 Mont. 207, 212 P. 512; State ex rel. Petters & Co. v. District Court of the Nineteenth Judicial District, 76 Mont. 143, 245 P. 529; In re Clark's Estate, 105 Mont. 401, 74 P.2d 401, 114 A.L.R. 496. Thus, in this case, no property in the shares of stock in question vested in Loretto Roberts upon the death of George Roberts, either by will or by operation of law, and the decree of distribution could create no title to that stock in her. On the contrary, immediately upon the death of George Roberts, title to the stock vested in Franklin Roberts, by virtue of the trust, and the decree of distribution could not divest him of that title and did not purport to. All that the Probate Court, by the decree of distribution, did was to say in effect: "Whatever title passed to Loretto Roberts in this stock by virtue of George Roberts' death is confirmed in her. It is not within my jurisdiction to determine what that title might be, but when that matter is decided by a court having jurisdiction to make that determination, whatever title is found to have vested in her upon George Roberts death is confirmed free of the conditions to which, as the estate of a deceased person, it was subject."

■ Likewise, the effect of the order of February 13, 1957, refusing to set aside the decree of distribution is the same. In the motion to vacate was set forth the fact that an action to determine ownership of the stock in question as between Franklin Roberts, claiming it as the beneficiary of the trust, and Loretto Roberts, claiming it as the heir of the deceased, was pending in a court having jurisdiction to determine that question. In denying the motion to vacate the decree the Court simply again recognized it had no jurisdiction to make that determination, and was leaving it to a court which had jurisdiction.

THEREFORE, IT IS ORDERED and this does order that the combined motions of plaintiff in interpleader for additional findings, and for a new trial be and the same hereby are denied, and her objections to the judgment proposed by defendant in interpleader are hereby overruled.

Done and dated this 4th day of September, 1959.

# APPLICATION

SF 1683

Account No. _____

## GENERAL FORM

I (we), the undersigned, hereby make application in the amount of $5000/00 tendered herewith, for shares of Capital Stock of *Investors Stock Fund Inc.*, at the public offering price of such shares determined in the manner described in the Prospectus.

A certificate for such shares shall be issued as directed below:

INDIVIDUAL

USE LINE(1)

(1)
MR.
MRS.
MISS
_George W. Roberts_ (age) *57*

*TRUSTEE

USE LINES (1) AND (2)

for

(2)
MR.
MRS.
MISS
_Franklin H. Roberts_ (age) *89*

and

AS BENEFICIARY UNDER THE DECLARATION OF TRUST WHICH I HAVE EXECUTED TODAY

**JOINT TENANTS

USE LINES (1) AND (3)

(3)
MR.
MRS.
MISS
_____ (age)

AS JOINT TENANTS AND NOT AS TENANTS IN COMMON

All communications from the Company shall be sent to the person in (1) above at the following address:

_Pok L F_

(STREET)

_Chinook_ _Montana_

(CITY) (STATE)

Signed at _Chinook_ (CITY) _Montana_ (STATE)

at the following address:

_Chinook_ (CITY) _Montana_ (STATE)

this *7* day of *November*, *1945*

(ZONE)

X _____

_George W. Roberts_

(SIGNATURE OF APPLICANT)

_C S Pingrey_

SIGNATURE OF BONDED REPRESENTATIVE OF INVESTORS SYNDICATE. DISTRIBUTOR

* Do not add word "trustee" to signature. Beneficiary need not sign. Copy of Declaration of Trust must be attached.
** Both joint tenants must sign.

## INVESTORS STOCK FUND, INC.

NOV. 13, 1945

RECEIVED

By _R. Hlinka._

$5000/00

[Form continued on next page]

198

## DECLARATION OF TRUST—REVOCABLE

SF 1683

I, the undersigned, having purchased or declared my intention to purchase certain shares of capital stock of *Investors Stock Fund Inc.* (the Company), and having directed that the certificate for said stock be issued in my name as trustee for *Franklin H. Roberts*, as beneficiary, whose address is *Bucyrus no* _____ under this Declaration of Trust, DO HEREBY

(Street) (City) (Zone) (State)

DECLARE that the terms and conditions upon which I shall hold said stock in trust and any additional stock resulting from reinvestment of cash dividends upon such original or additional shares are as follows:

(1) During my lifetime all cash dividends are to be paid to me individually for my own personal account and use; provided, however, that any such additional stock purchased under an authorized reinvestment of cash dividends shall become a part of and subject to this trust.

(2) Upon my death the title to any stock subject hereto and the right to any subsequent payments or distributions shall be vested absolutely in the beneficiary. The record date for the payment of dividends, rather than the date of declaration of the dividend, shall, with reference to my death, determine whether any particular dividend shall be payable to my estate or to the beneficiary.

(3) During my lifetime I reserve the right, as trustee, to vote, sell, redeem, exchange or otherwise deal in or with the stock subject hereto, but upon any sale or redemption of said stock or any part thereof, the trust hereby declared shall terminate as to the stock sold or redeemed, and I shall be entitled to retain the proceeds of sale or redemption for my own personal account and use.

(4) I reserve the right at any time to change the beneficiary or revoke this trust, but it is understood that no change of beneficiary and no revocation of this trust except by death of the beneficiary, shall be effective as to the Company for any purpose unless and until written notice thereof in such form as the Company shall prescribe is delivered to the Company at Minneapolis, Minnesota. The decease of the beneficiary before my death shall operate as a revocation of this trust.

(5) In the event this trust shall be revoked or otherwise terminated, said stock and all rights and privileges thereunder shall belong to and be exercised by me in my individual capacity.

(6) The Company shall not be liable for the validity or existence of any trust created by me, and any payment or other consideration made or given by the Company to me as trustee or otherwise, in connection with said stock or any cash dividends thereon, or in the event of my death prior to revocation, to the beneficiary, shall to the extent of such payment fully release and discharge the Company from liability with respect to said stock or any cash dividends thereon.

Dated *Nov. 7, 1945.*

*George W. Roberts*

Sign in exactly the same manner as on the application